In re the Marriage of John Thomas **RILEY**, Petitioner, Respondent,

v.

Mary Elizabeth **RILEY**, Appellant.

No. C7–85–2265.

Court of Appeals of Minnesota.

April 22, 1986.

Mary Elizabeth Riley, pro se.

Charles A. Cox, Charles A. Cox, III, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and LANSING, and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This is the second appeal of this dissolution matter. Previously, this court affirmed the trial court's orders regarding the property settlement, but reversed and remanded on the issues of maintenance and child support because the trial court failed to make adequate findings explaining its decision to deny maintenance and to deviate upward from the child support guidelines. *See Riley v. Riley*, 369 N.W.2d 40 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Aug. 29, 1985). On remand, the trial court issued additional findings and reaffirmed its initial decision. Mary Riley again appeals the denial of maintenance and John Riley again asks for review of the amount of child support. Mary Riley also appeals the trial court's denial of interest on the cash settlement awarded to her in August 1984 but not paid to her until December 1985. We affirm on the issue of child support and reverse on the issue of maintenance, and remand for a calculation of postjudgment and interest.

## FACTS

The parties' six-year marriage was dissolved in August 1984. Both parties had been married before, and in 1984 John Riley was age 45 and Mary Riley was age 44. Appellant Mary Riley was awarded custody of the parties' two children, Kathleen, born in 1979, and Timothy, born in 1982. Appellant also has custody of two teenage children from a previous marriage. Respondent John Riley was ordered to pay monthly child support of $450 per child, an upward deviation from the child support guidelines. Given the trial court's finding that respondent has a net monthly income of $1550, the total child support award under the guidelines would have been $465. The trial court denied an award of maintenance for appellant.

Respondent was awarded property worth approximately $957,000, including:

| | |
|---|---|
| His nonmarital property (mostly investments) | $895,000 |
| Her nonmarital property (cabin and account) | $30,500 |
| Marital property (profit sharing plan and account) | $31,484 |

Appellant was awarded property worth approximately $400,000, including:

| | |
|---|---|
| Her nonmarital property, approximately (her interest in home, about $10,000 in an account, and rights under father's spendthrift trust, evidently worth near or over $200,000) | $270,000 |

| His nonmarital property ($30,000 cash and his interest in home) | $62,000 |
|---|---|
| Marital property, approximately (interest in home, cars, and household goods (some nonmarital)) | $70,000 |

On appeal, this court reviewed several issues. First, we affirmed the trial court's determination that assets worth $300,000 should be categorized with respondent's other nonmarital property, rejecting appellant's contention that these assets were marital property. We also affirmed the trial court's property division.

Second, we reversed the trial court's denial of maintenance and its award of child support in an amount greater than that owed under the guidelines and remanded for more adequate findings on both of those issues. In remanding, we noted that although respondent's nonmarital holdings exceeded $950,000, the trial court found that respondent had only $120 per month in income from investments. His salary, formerly over $100,000, was reduced to $40,000 when he took a part-time position in 1983. We also noted that appellant had not worked outside the home on a full-time basis since 1966, had worked only occasionally and part-time during her first marriage, and did not work at all during her marriage to respondent. In addition, we noted that appellant, who was then 44 years old, was caring for two young children "at a time when the children of many women in traditional families are nearly grown." *Riley*, 369 N.W.2d at 45. We observed that she estimated her monthly expenses at $3100, but that the trial court had made no findings on her needs. Her primary asset, the spendthrift trust, entitles her only to trust income, which we observed had amounted to $1167 per month. We instructed the trial court to review all of these factors and to issue findings and an award consistent with them.

On remand, the trial court reaffirmed its finding that respondent's net monthly income is $1550, consisting of a $2180 salary and $120 in investment income, less a $750 monthly child support obligation from a prior marriage. On the other hand, the court made its finding of fact on appellant's reasonable expenses, confirming her report that they were $3072 per month.

The court made an additional finding that:

[Appellant's] situation is somewhat unique in that, at her age, she has children ages 5 and 2. It is reasonable under the circumstances that [appellant] not work until both children are in school. In light of [appellant's] circumstances, the parties' relative financial positions, and the needs of the parties' minor children, an upward deviation from child support guidelines is warranted in this case.

The trial court affirmed its prior child support decision. In addition, in spite of its finding that appellant's needs were in the amount she had estimated, and that under the circumstances it is reasonable for appellant not to be employed, the court affirmed its denial of a temporary maintenance award. The court found that:

[T]his marriage is of relatively short duration, just over six years. It is [appellant's] second marriage. [Appellant] is college educated and has no physical disabilities that would prevent her from finding employment. She has sufficient income, including child support hereinafter awarded, to meet her needs and those of the parties' two minor children. In consideration of these factors, spousal maintenance is inappropriate in this case.

Finally, the trial court denied appellant's request that she be awarded interest on the $30,000 awarded her in August 1984 from respondent's nonmarital assets. Respondent did not fulfill his obligation to pay appellant the $30,000 until December 1985.

## ISSUES

1. Did the trial court abuse its discretion in setting child support at $900 per month?

2. Did the trial court abuse its discretion in refusing to award maintenance?

3. Did the trial court err in refusing an award of interest on the cash settlement not paid to appellant until 16 months after the order mandating the payment was entered?

## ANALYSIS

1. In the absence of a showing that the trial court abused its discretion, a determination of child support will not be reversed. *Reck v. Reck*, 346 N.W.2d 675, 677 (Minn. Ct.App.1984). A trial court may order child support in an amount above or below the amount prescribed by the statutory guidelines if it makes findings supporting the departure. Minn.Stat. § 518.551, subd. 5(e) (1984). Moreover,

> [t]he statutory guidelines are not to be applied mechanically. Under Minnesota's statutory scheme, arbitrary use of calculations under the guidelines is avoided by thoughtful consideration of departure. Minn.Stat. §§ 518.17, subd. 5, 518.551, subd. 5(e) (1984).

*Linderman v. Linderman*, 364 N.W.2d 872, 875 (Minn.Ct.App.1985).

When departing from the guidelines, the trial court is to consider factors stated in Minn.Stat. § 518.17, subd. 4, including the resources and reasonable needs of each parent and the child and the standard of living the child would have enjoyed had the marriage not been dissolved. *See LeTourneau v. LeTourneau*, 350 N.W.2d 476, 478 (Minn.Ct.App.1984) (reversing trial court's downward departure where reason for departure was not related to the statutory factors).

 In the present case, the trial court's decision to award more child support than the amount contemplated by the guidelines is a reflection of relevant statutory factors. The standard of living enjoyed by the children prior to the dissolution was very high and could not be maintained with a lesser amount of support. Respondent's financial resources greatly exceed those available to appellant. The trial court's determination is supported by ample reasons and was within the scope of its discretion.

2. The statutes permit an award of spousal maintenance to appellant if she lacks sufficient "property" to provide for her "reasonable needs," especially during a period of education, or if she cannot "adequately support" herself with her earnings in "appropriate employment." *See* Minn. Stat. § 518.552, subd. 1 (1984). Subdivision 1 of the statutes expressly addresses one "appropriate" reduction of earnings, *i.e.*, employment plans made by a custodial parent to accommodate care of children at home. *Id.*

The statutory criteria for the "just" amount and time of maintenance include the resources of each party, the duration of the marriage, contributions of each spouse to the marriage, time the recipient needs for education leading to "appropriate" employment, the age and skills of the spouse seeking maintenance, and the couple's previous standard of living. *Id.* § 518.552, subd. 2. "Courts have interpreted the statute to require a balancing of the supporting spouse's financial needs and capacity against the other spouse's financial needs and capacity." *Otte v. Otte*, 368 N.W.2d 293, 297 (Minn.Ct.App.1985). The determination of whether to award support is discretionary, but that discretion must be examined in light of controlling statutory guidelines. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Each case must be determined on its own facts, and no single statutory factor is dispositive. *Id.* at 39. This court's review of the trial court's exercise of discretion must also include an examination of whether the trial court's findings of fact that underlie its determination on maintenance are clearly erroneous. Minn.R.Civ.P. 52.01.

 On remand, the trial court found that appellant has sufficient income "to meet her needs and the needs of the parties' two minor children." This finding is clearly erroneous. Appellant's financial needs are quite apparent. The trial court made a finding that her reasonable monthly expenses total $3072. Her monthly income, however, consists only of the $900 ordered by the court for child support, $200

in child support for her two older children, and $1167 in income from her father's trust, for a total of $2267. It is not evident from the findings or the record that appellant has any income-producing balance of deposits after payment of expenses incurred since trial of the case.

Part of appellant's needs relate to her two older children. The trial court found that this part totaled $584, $384 more than support received for the children. Those needs, however, also reduce appellant's available income and as such constitute a relevant factor in the determination of whether a need for maintenance is indicated. *See* Minn.Stat. § 518.552, subd. 2(a) (1984) (the financial resources of the party seeking maintenance and the party's ability to meet those needs independently must be considered in determining maintenance). Support payments for the older children also reduce her needs. It is evident that appellant's needs exceed her income by $805, including over $400 that is not related to expenses for her older children.

Furthermore, the trial court did not cite any limitations on respondent's income as a reason to deny maintenance. We find no evidence to indicate that respondent is unable to pay the maintenance appellant needs for the next several years, that is, until the parties' children are both in school and appellant has obtained the additional education and training necessary before she can find self-supporting employment. To the contrary, as vice-president and president of the company that he formed, appellant earned an annual salary in excess of $100,000 during the marriage. In addition, his real and personal property holdings, excluding his condominium, its furnishings, and the parties' cabin, exceed $745,000 and include $436,682 in stock holdings, $200,000 in limited partnership interests, a $10,000 partnership interest, $36,604 in a profit-sharing account, and $64,655 in cash investment accounts.

The trial court found that many of respondent's assets, primarily his stock holdings, are not income producing and found that respondent's income from all of his investments total $120 per month. Even if respondent's stock, partnerships, and the profit-sharing account are not considered, however, we find it beyond the bounds of credibility that the return from respondent's $64,655 in cash investment accounts is only $120 per month. The trial court's finding on respondent's income is not supported by the evidence and is clearly erroneous.

The statute states that the trial court must consider the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Minn.Stat. § 518.552, subd. 2(f) (1984). Respondent's ability to meet both his and appellant's need is evident. Although some of his assets may not currently produce income, his earnings and other income are adequate such that he can supplement appellant's resources during the years she is at home with the children and until she is self-supporting.

Statutory considerations on maintenance are mostly related to the needs of a spouse and the ability of the other spouse to contribute. *See* Minn.Stat. § 518.552, subd. 2. The duration of the marriage is a consideration, at least to the extent it is part of a showing of need based on an absence from employment. *Id.* § 518.552, subd. (d). We do not agree, however, that duration of marriage is a consideration that dominates analysis of circumstances of need and ability to contribute, particularly where the needs are enlarged because of care given to young children of the parties.

The trial court has taken action to reduce the maintenance need by increasing child support. Nonetheless, the trial court's findings demonstrate appellant's need and respondent's ability to pay such that a maintenance award was required by the standard of Minn.Stat. § 518.552. Moreover, the notion of an enlarged child support award is open to question because of the trial court's erroneous understatement of respondent's resources for payment.

The trial court's failure to award maintenance was an abuse of discretion. We

conclude that maintenance is required in this case as a matter of law. Because this is a second reversal of the trial court on the maintenance question, and having regard for findings of fact the trial court has now made, we conclude that monthly maintenance of $500 must be paid by respondent to appellant for five years.

 3. Respondent was ordered to pay appellant $30,000 as part of the property settlement of the dissolution. Respondent was ordered to make this payment within thirty days of the entry of the judgment and decree on August 10, 1984. Respondent did not fulfill this obligation until December 1985. Appellant argues that the trial court erred in denying her request for interest on the amount during the intervening months.

Minnesota law provides that interest shall accrue on unpaid balances of judgments from the time the judgment is entered until it is paid. Minn.Stat. § 549.09, subd. 2 (1984). Respondent, however, argues that the statute only requires the payment of interest "when the judgment is for the recovery of money." Minn.Stat. § 549.09, subd. 1 (1984). He argues that the payment of $30,000 is not a recovery of money, but a division of property that does not come within the purview of the statute. We disagree.

We find no reason to distinguish an award of money in a dissolution action from judgments for the recovery of money in other types of cases. For more than a year, respondent deprived appellant of the $30,000 awarded to her by the trial court in the judgment. Moreover, the statute explicitly prohibits prejudgment interest on "judgments, decrees, or orders in dissolution, annulment, or legal separation actions." *Id.* This exclusion indicates that awards of interest on dissolution judgments are included in the postjudgment interest provisions. *See* Minn.Stat. § 645.-19 (1984) (exceptions expressed in a law shall be construed to exclude all others). We remand to the trial court for entry of a judgment for interest on the $30,000 from September 10, 1984 through December 1, 1985.

## DECISION

The trial court's award of child support in an amount greater than that contemplated by the guidelines was not an abuse of discretion. The trial court's denial of maintenance was an abuse of discretion in light of the parties' relative resources and appellant's employment situation. Respondent is ordered to pay maintenance to appellant of $500 per month, beginning in May 1986 and continuing for five years. The trial court administrator will enter judgment for maintenance and for interest consistent with the decisions stated in this opinion.

Affirmed in part and reversed in part.